IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

ADRIAN THADDEUS WILSON, PRO SE,      §
TDCJ-CID No. 1207116,                §
Previous TDCJ-CID No. 807295,        §
Previous TDCJ-CID No. 913340,        §
                                     §
      Plaintiff,                     §
                                     §
v.                                   §      2:13-CV-0119
                                     §
WILBUR L. KEMPH, COURTNEY B. KING,   §
STEVE R. CANTU, BRANDON J. HARRIS,   §
GARRETT E. ROCKHOLT, and             §
G. S. DAVID,                         §
                                     §
      Defendants.                    §

**REPORT AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is the December 30, 2013 Motion for Summary Judgment [D.E. 27]

filed by defendants CANTU, HARRIS, KEMPH, KING, and ROCKHOLT with accompanying

brief [D.E. 28] and Appendix [D.E. 29], including two discs [D.E. 34] containing the use of force

video and a recording of a telephone conversation, and a sealed Appendix A [ D.E. 31].  Plaintiff

filed his response and supporting exhibits on January 21, 2014 [D.E. 35].  Further, on

December 30, 2013, defendants filed a notice [D.E. 32] with the Court that plaintiff had been

allowed to view the video and hear the telephone conversation docketed at D.E. 34.

The Court previously issued, on October 4, 2013, an Order of Partial Dismissal

dismissing all of plaintiff's claims against defendant DAVID with prejudice as frivolous.

**PLAINTIFF'S CLAIMS**

In this lawsuit, plaintiff claims that, on or about April 6, 2013, he had a fight with an Officer Klein which resulted in plaintiff being placed in handcuffs and taken to pre-hearing detention.  Plaintiff does not deny that he assaulted Officer Klein, but appears to justify his conduct based upon Officer Klein's actions in terminating a telephone call in which plaintiff was participating.  Plaintiff alleges that, on the way to pre-hearing detention after the assault on Officer Klein, defendant Sgt. KING ordered defendants KEMPH, CANTU, HARRIS, and ROCKHOLT to take plaintiff down for no reason whatsoever and that they then proceeded to gratuitously beat, stomp, and kick him.  Specifically, plaintiff alleges defendant KEMPH kicked plaintiff twice in his face and stomped his head once.  Plaintiff alleges defendant KING repeatedly kicked him in his groin.  Plaintiff says defendant CANTU punched plaintiff in the back of his head and neck.  Plaintiff says defendant HARRIS slammed him and repeatedly punched him in the face and stomach.  Plaintiff says defendant ROCKHOLT put plaintiff in some kind of leg hold and twisted his foot "trying to break [plaintiff's] foot."  [Plaintiff's August 13, 2013 response to the Court's Questionnaire at Question No. 4.]

Plaintiff says "all of his injuries were directed to his face, teeth, and pubic areas." [Plaintiff's Amended Complaint at page 4(B) Par. F.]  However, plaintiff later stated his injuries consisted of "knots on [his] head, eye swollen, right front tooth chipped, lip busted." [Plaintiff's August 13, 2013 response to the Court's Questionnaire at Question No. 5.]

Plaintiff says the alleged excessive use of force was in retaliation for the injuries he earlier inflicted on Officer Klein and claims the defendants conspired to retaliate against plaintiff.

Plaintiff also claims he has a state-created constitutional right to the use of force plan promulgated by TDCJ and any variance from the plan is a violation of his constitutional rights.

Plaintiff says he was given a false disciplinary case for trying to kick defendant Officer ROCKHOLT, and denies he attempted to do so.  He further contends the force used against him was not utilized in a good faith effort to maintain or restore discipline.  Plaintiff represented to the Court that he did not lose any accumulated goodtime credits as a result of the disciplinary case arising from this incident[1].

Plaintiff also alleges he was confined in pre-hearing detention without food or water for four and one-half days which caused him to suffer "eyesight disorientation" and weight loss. [Plaintiff's Amended Complaint at 4(B), par. G.]   Plaintiff says he was told his water was turned off so he couldn't flood the cell [Plaintiff's August 13, 2013 Response to the Court's Questionnaire at Question No. 18].  Plaintiff says he was not given food for four and one-half days on orders from defendant Captain KEMPH and that his water was not turned on periodically so he could drink [Plaintiff's August 13, 2013 Response to the Court's Questionnaire at Question Nos. 16 and 18].

Plaintiff requests preliminary and permanent injunctive relief in the form of an order that defendants stay away from him, as well as an award of $150,000.00 compensatory damages and $200,000.00 punitive damages against each defendant, jointly and severally, and costs.

---

[1]Notwithstanding plaintiff's representation, the Disciplinary Hearing Report produced by defendants shows plaintiff lost 180 days of goodtime.

**UNDISPUTED FACTS**

Plaintiff is proceeding *pro se* and *in forma pauperis*.  During the time relevant to this case, plaintiff was a prisoner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID).  Similarly, at all times relevant to this cause, the defendants were employed by the Texas Department of Criminal Justice, Correctional Institutions Division, and were acting under color of state law.

On or about April 6, 2013, plaintiff was on the telephone with his mother when CO III Klein ordered plaintiff several times to finish his phone call and "rack up" (return to his housing assignment).  Plaintiff repeatedly refused, saying he was paying for the phone call.  Plaintiff says "Officer Klein . . . reached and brushed plaintiff's face as he attempted to hang up in plaintiff's mother's face, attempting to hang up the phone call, and thus provoked the initial physical altercation." [Plaintiff's January 21, 2014 Response at page 4, Par. IV.B].

Plaintiff attacked Officer Klein [Defendants' Exhibit at Bates 64], and the officer sustained multiple injuries, including a fractured nose and lacerations to his chin and lip requiring eleven stitches.  CO IV Harper witnessed the assault against Officer Klein and called for an emergency response team.  Defendants Sergeant CANTU and CO III ROCKHOLT were the first to respond.  CANTU ordered plaintiff to lie face down on the ground and defendant ROCKHOLT applied hand restraints.

During plaintiff's escort to pre-hearing detention and before a video camera was present, a use of force occurred.  As a result of that use of force, plaintiff's feet were placed in restraints. When a video camera arrived to record the proceedings, plaintiff was taken to the infirmary and

given a use-of-force physical examination.  The examining nurse found plaintiff had suffered an abrasion on one of his right fingers and a scratch above his left eyebrow.

Plaintiff was photographed and placed in pre-hearing detention and the video was terminated.  Plaintiff later received a disciplinary case for assault on Officer Klein and another disciplinary case for attempted assault on defendant Officer ROCKHOLT.  Plaintiff declined to attend either disciplinary hearing and was found guilty of both offenses.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

By their motion for summary judgment, all defendants argue they are entitled to qualified immunity on plaintiff's excessive force claim; that there is no disputed material fact supporting plaintiff's claims of excessive force, conspiracy, retaliation, violation of plaintiff's Fourteenth Amendment Due Process rights; or Eighth Amendment conditions of confinement claim; and that plaintiff's claims against them in their official capacity are barred by the Eleventh Amendment.  Defendants also contend plaintiff cannot demonstrate personal involvement by defendants  KEMPH, KING, CANTU, and ROCKHOLT; defendant HARRIS applied force in a good-faith effort to maintain or restore discipline and his actions were reasonable; that plaintiff's injury shows the force was de minimis; plaintiff's claim of retaliation is barred by qualified immunity; plaintiff does not have a constitutional right to the TDCJ use of force plan; he cannot show the elements of intent or causation regarding his claim of retaliation on his disciplinary case for attempted assault on defendant ROCKHOLT; he cannot show he was not provided food, water and other items; and defendants are entitled to Eleventh Amendment Immunity.

Defendants present the following evidence:

Bates Nos. 1-12          Exhibit A          Plaintiff's TDCJ Medical Records with
                                            attached business records affidavit

| | | |
|---|---|---|
| Bates Nos. 13-30 | Exhibit B | Plaintiff's TDCJ Classification and Disciplinary Records with attached business records affidavit |
| Bates Nos. 31-35 | Exhibit C | Plaintiff's TDCJ Grievance Records with attached business records affidavits |
| Bates Nos. 36-42 | Exhibit D | Pre-Hearing Detention Records from April 6, 2013 to April 11, 2013 with attached business records affidavit |
| Bates Nos. 43-47 | Exhibit E | Emergency Action Center Report for April 6, 2013 incident with attached business records affidavit |
| Bates Nos. 48-90 | Exhibit F | TDCJ Use of Force Report No. MA-01868-04-13 with attached business records affidavit |
| Bates Nos. 91-92 | Exhibit G | Video regarding TDCJ Use of Force Report No. MA-01868-04-13, (DVD in envelope) |
| Bates Nos. 93-94 | Exhibit H | Plaintiff's telephone call recording on April 6, 2013 (CD in envelope) |
| Bates Nos. 95-96 | Exhibit I | Affidavit of Wilbur L. Kemph |
| Bates Nos. 97-99 | Exhibit J | Affidavit of Courtney B. King |
| Bates Nos. 100-102 | Exhibit K | Affidavit of Steve R. Cantu |
| Bates Nos. 103-105 | Exhibit L | Affidavit of Brandon J. Harris |
| Bates Nos. 106-108 | Exhibit M | Affidavit of Garrett E. Rockholt |

Plaintiff responds with several unsworn declarations under penalty of perjury which he submits with his Response and argues they create many disputed issues of fact which prevent summary judgment; that defendants' failure to obtain a video camera before escorting plaintiff to pre-hearing detention violated plaintiff's Fourteenth Amendment Due Process rights in the TDCJ use of force plan and evinces defendants' conspiracy and intent to retaliate; that any TDCJ

records which show defendants CANTU, KEMPH, KING, and ROCKHOLT were not involved in plaintiff's beating are false and part of the defendants' conspiracy to protect their unconstitutional practices.

Plaintiff concludes by stipulating he is not suing defendants for money in their official capacities.

Plaintiff submits the following as summary judgment evidence:

| | |
|---|---|
| Exhibit A | Plaintiff's Unsworn Statement under penalty of perjury regarding an April 4, 2013 IOC from defendant Courtney King to Capt. Boland, with attached IOC by King and an April 7, 2013 IOC by Officer Harper |
| Exhibit B | Plaintiff's Unsworn Statement under penalty of perjury regarding a Witness Statement by inmate Kendrick Washington, with attached Witness Statement by inmate Washington and another Witness Statement by inmate Carlos Davis |
| Exhibit C | Plaintiff's Unsworn Statement under penalty of perjury regarding the Use of Force Report concerning plaintiff's attack on Officer Klein and his attempted attack on defendant Officer ROCKHOLT, with two pages of the subject report and witness statements by inmate Dixon, Nurse Frisbie, inmate Ramos, and inmate Thomas |
| Exhibit D | Plaintiff's Unsworn Statement under penalty of perjury regarding attached Grievances submitted concerning the use of force and not being fed |
| Exhibit E | Plaintiff's  Unsworn Statement under penalty of perjury regarding defendant ROCKHOLT's attached report that plaintiff attempted to kick him |
| Exhibit F | Plaintiff's  Unsworn Statement under penalty of perjury regarding attached documents |
| Exhibit G | An  Unsworn Statement under penalty of perjury by inmate Garza |
| Exhibit H | An  Unsworn Statement under penalty of perjury by inmate Geter |
| Exhibit I | An  Unsworn Statement under penalty of perjury by inmate Allen |

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Only disputes of fact that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

**THE STANDARD OF SUMMARY JUDGMENT REVIEW**
**UPON A PLEA OF QUALIFIED IMMUNITY**

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of

litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)

(quoting *Mitchell v. Forsyth*, 472, U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

Qualified immunity "provides ample protection to all but the plainly incompetent or those who

knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d

271 (1986).

Since qualified immunity depends on whether the defendant violated a clearly established

constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a

violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789,

1793, 114 L.Ed.2d 277 (1991).  Analysis at this stage is performed under the "currently

applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to

have been violated was clearly established at the time of the incident; and, if so, whether the

conduct of the defendant was objectively unreasonable in  light of contemporaneous clearly-

established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998).  Although analysis under the

first prong requires the court to consider currently applicable constitutional standards, analysis

under the second prong requires a court to measure the objective reasonableness of an official's

conduct with reference to the law as it existed at the time of the conduct in question. *Id*. (citing

*Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Although it may be "difficult to imagine factual circumstances in which a trier of fact could find deliberate indifference as defined by *Farmer*[2] and nevertheless conclude that a reasonable person in defendant's position was not chargeable with knowledge that his or her actions violated the plaintiff's clearly established constitutional rights," in analyzing a claim of qualified immunity, the test is objective reasonableness, not subjective deliberate indifference. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998)(quoting *Briecke v. Coughlin*, No. 92-CV-1211, 1994 WL 705328 at 6 (N.D.N.Y.Dec. 16, 1994).   Consequently, at the qualified immunity stage, the deliberate indifference standard only allows an examination of whether, under the standard not to be deliberately indifferent, the acts or omissions of the defendant were objectively unreasonable as a matter of law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

## PLRA SCREENING OF PLAINTIFF'S CLAIMS and CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### SCREENING PURSUANT TO THE PRISONER LITIGATION REFORM ACT

Under pre-PLRA caselaw, district courts had broad discretion in determining at any time whether an in forma pauperis suit was frivolous. *Wesson v. Oglesby*, 910 F.2d 278 (5th Cir. 1990).  Further, under the PLRA, the Court is required to "dismiss at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on

---

[2]Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

which relief may be granted . . . ."  28 U.S.C. 1915(e)(2)(B).  New facts have been presented

which persuade the Court additional frivolousness review is appropriate at this time.

**FOURTEENTH AMENDMENT DUE PROCESS RIGHTS IN THE TDCJ USE OF FORCE PLAN**

Plaintiff claims his Fourteenth Amendment Due Process rights were violated when the

defendants failed to get a video camera to record plaintiff's initial escort to pre-hearing detention

after plaintiff had attacked and beaten Officer Klein.  Plaintiff argues the mandatory language in

the TDCJ use of force policy results in a state-created due process right which is federally

protected.

Plaintiff is incorrect.  In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d

418 (1995), the Supreme Court held an inmate's liberty interest is "generally limited to freedom

from restraint which, while not exceeding the sentence in such an unexpected manner as to give

rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id*. at 474,

115 S.Ct. at 2295.  In the wake of Sandin, a prisoner's potential Fourteenth Amendment due

process liberty claims are dramatically narrowed and prisoners may no longer comb through state

statutes and prison regulations searching for the "grail of limited discretion" upon which to base

a due process liberty claim.  *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).  After *Sandin*, a

prisoner has a liberty interest only in "freedom[s] from restraint . . . impos[ing] atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life," and these

will normally consist of deprivations which clearly impinge on the duration of confinement.

*Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115

S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).  Plaintiff has no Due Process right in the TDCJ use

of force policy, per se.  Instead, he must seek protection, if any, in the Eighth Amendment prohibition against cruel and unusual punishment.  Plaintiff's Due Process claim regarding the TDCJ use of force plan lacks an arguable basis in law and is frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989).

**RETALIATION**

To claim retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).  The inmate must be able to point to a specific constitutional right that has been violated. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999).  Plaintiff contends the assault upon Officer Klein was the trigger for the "retaliation" plaintiff alleges.  Obviously there exists no constitutional right to attack a TDCJ officer if an inmate disagrees with the order that officer has given him and that officer accidently "brush[es] [the inmate's] face" while attempting to get him to comply with the order.  The Constitution does not protect such an act by plaintiff and plaintiff cannot state a claim of retaliation based upon it.  Plaintiff has failed to state a retaliation claim on which relief can be granted.

**EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM – THE INITIATION OF FORCE**

Because a use of force may be legitimate at its initiation but violate the Eighth Amendment if the use of force continues after it is no longer necessary, the Court will examine the initiation of the use of force and the amount of force utilized.

Plaintiff claims defendants KEMPH, KING, CANTU, ROCKHOLT and HARRIS applied unnecessary force against him by taking him down while escorting him to pre-hearing

detention following the attack on CO Klein.  He alleges the defendants conspired to do this in

retaliation for his attack on CO Klein.

By his August 13, 2013 response to the Court's Briefing Order Questionnaire at Question

No. 7, plaintiff revealed he had received a disciplinary case for attempting to kick an officer

during the escort.  This attempt to kick an officer, of course, was the event which defendants

contend necessitated the use of force to place plaintiff against the wall and take him to the

ground.

The Court asked plaintiff whether he was found guilty of the disciplinary charge and what

punishment, if any, he received.  At his responses to Question Nos. 8 and 9 of that Briefing

Order, plaintiff responded he received various privilege restrictions and affirmatively stated he

did not lose any goodtime credits.  Plaintiff failed to attach a copy of the Disciplinary Hearing

Report, responding "N/A" to the Court's order.  [Plaintiff's August 13, 2013 response to the

Court's Questionnaire at no. 11].

Among the summary judgment evidence submitted by defendants is a copy of the

Disciplinary Hearing Report for his disciplinary case no. 20130217934 on the charge of

"attempting to assault Officer Rockholt by trying to kick Officer Rockholt."  [Defendants'

Exhibit B at Bates no. 20].  Review of the Disciplinary Hearing Report shows plaintiff was found

guilty and received punishment which included the loss of 180 days of goodtime credits.

[Defendants' Exhibit B at Bates no. 20] [see, also, Defendants' Exhibit B at Bates no. 14

(plaintiff's disciplinary records showing plaintiff's April 6 2013 Offense Code 03.3 for a staff

assault which resulted in the loss of 180 days of goodtime)].  Plaintiff's misrepresentation of the

facts and his refusal to supply the Court with a copy of his disciplinary hearing report prevented

the Court from learning that plaintiff's representation that he had lost no accumulated goodtime

credits was not correct and frustrated the Court's ability to screen this claim under the Prison

Litigation Reform Act.

In the wake of *Edwards v. Balisok*,  520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906

(1997), the *Heck*[3] doctrine is now applied to the prison disciplinary setting.  For this reason,

plaintiff's claim regarding the initiation of force during the escort is not cognizable under section

1983 without a prior showing of favorable termination, that is, that the results of the disciplinary

hearing have already been overturned, either on administrative appeal, through habeas, or by

some other means.  *See, also, Woods v. Smith*, 60 F.3d 1161, 1165 n. 16 (5th Cir. 1995)(citing

*Ordaz v. Martin*, 5 F.3d 529 (5th Cir. 1993)(unpublished)).  Plaintiff's August 13, 2013

Questionnaire Responses at Question Nos. 12, 13, and 14 affirmatively demonstrate that his

disciplinary case has not been "reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a

federal court's issuance of a writ of habeas corpus."  A favorable determination on the Eighth

Amendment claim that the take-down of plaintiff was not triggered by an attempt by plaintiff to

kick Officer ROCKHOLT would call into question the validity of the result of plaintiff's

disciplinary hearing and the forfeiture of his goodtime credits.  Consequently, plaintiff's

challenge to this use of force lacks an arguable basis in law and is frivolous until the *Heck*

conditions have been met.  *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

---

[3]*Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994).

**FALSE DISCIPLINARY CASE**

To the extent plaintiff is attempting to state a claim based on his allegation that the

disciplinary case was false, there is no longer a freestanding section 1983 claim for malicious

prosecution in this circuit. *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). Thus, an

inmate's claim that an officer initiated disciplinary proceedings against him without probable

cause does not state a claim for relief. *Id.*

**QUANTUM OF FORCE UTILIZED**

There remains plaintiff's allegation that the force utilized <u>after</u> plaintiff's take-down was

excessive. Plaintiff has alleged a terrible beating occurred after he was forced to the ground.

Specifically, plaintiff alleges defendant KEMPH kicked plaintiff twice in his face and stomped

his head once. Plaintiff alleges defendant KING repeatedly kicked him in his groin. Plaintiff

says defendant CANTU punched plaintiff in the back of his head and neck. Plaintiff says

defendant HARRIS slammed him and repeatedly punched him in the fact and stomach. Plaintiff

says defendant ROCKHOLT put plaintiff in some kind of leg hold and twisted his foot "trying to

break [plaintiff's] foot." In his January 21, 2014 response to defendants' motion for summary

judgment, plaintiff expanded on this allegation saying in his <u>unsworn</u> Response that:

> Each named defendant did kick or punch plaintiff's face, head, or
> testicles after he was thrown to the ground. Defendant KEMPH
> did lift his foot in the air and brought it down against plaintiff's
> head and face repeatedly. Defendant KING did lift her foot and
> brought it down on plaintiff's side and testicles repeatedly. The
> other defendants already close to the ground, and plaintiff, punched

him with closed fists as plaintiff tried to conceal his face from the
aggressive blows.

Plaintiff's January 21, 2014 Response at pages 5-6, Par. F.

USE OF FORCE VIDEO

The Court has reviewed the use of force video submitted by defendants as Exhibit G, the
accuracy of which plaintiff does not contest.  This video does not show the initial take-down or
the force utilized to subdue plaintiff after that take-down.  Instead, it shows the events which
followed immediately after plaintiff was subdued.

Regarding the use of force video, plaintiff cites *Scott v. Harris*, 550 U.S. 372, 127 S.Ct.
1769, 167 L.Ed.2d 686 (2007) for the proposition that "all facts that are not blatantly
contradicted by the record remain entitled to an interpretation most favorable to the non-moving
party," which, plaintiff argues, means the Court must adopt his version of the facts.

Exhibit G, the video, shows plaintiff lying in the corridor, partly on his stomach and
partly on his side, with a separate officer restraining each arm and each leg, while a fifth officer
(Officer CANTU) orders that plaintiff be assisted up to his knees and then assisted to a standing
position.  Plaintiff is assisted to his knees, then to his feet, and stands for a moment facing the
camera, upright and without any sign of distress.  Plaintiff then walks to the prison infirmary in
both hand and leg restraints, accompanied by a guard holding one of his arms on either side, with
Officer CANTU supervising and another officer operating the video camera.  Plaintiff's posture
is normal; although ankle restraints have been placed on him, his gait is casual and without any
sign of pain or injury; his demeanor is relaxed.  Plaintiff and the two guards at his sides, the
supervisor, and the camera operator are met on the way to the infirmary by a nurse who takes
plaintiff's name and prisoner ID number.

Once at the infirmary, plaintiff is seated in a chair, his blood pressure is taken by Nurse Frisbie, and he is asked if he was injured.  Plaintiff is then assisted to his feet and begins to talk about how he "almost killed" CO Klein and how they had to have a guard on each arm to control him.  Nurse Frisbie examines plaintiff and inquires about an injury she saw on his finger. Plaintiff denies this injury was from the use of force.  The nurse asks plaintiff about a scratch above his eye, after which plaintiff denies other injuries.  Nurse Frisbie then says plaintiff is "cleared to go."

Plaintiff is escorted to his cell.  During the journey from the infirmary to plaintiff's cell, plaintiff's face is clearly visible to the camera and shows no sign of blood, injury of any sort, distress, or discomfort.  Plaintiff walks without any distress while being escorted to his cell, upright and with normal coordination.  At his cell, plaintiff is photographed from the front and the back, placed on his knees, released from the leg restraints, and ordered to proceed into his cell, which he does while on his knees, without difficulty.  He then is required to surrender his hand restraints and comply with a strip search.  Plaintiff is given a form on which to write his statement concerning the use of force and the use of force video is terminated.

Review of plaintiff's medical records, Defendants Exhibit A (Sealed), shows a Use of Force Nursing Note for April 6, 2013 at 10:07 a.m., by Nurse Frisbie.  Nurse Frisbie notes plaintiff denied any injuries due to the use of force [Defendants' Exhibit A (Sealed) at Bates No. 2].  On examination, Nurse Frisbie found a small abrasion to plaintiff's second digit on his right hand and a scratch to his left eyebrow and upper left eye [Defendants' Exhibit A (Sealed) at Bates No. 2; see also, Plaintiff's Exhibit C at Wilson 228].  Her assessment was that plaintiff suffered no adverse health effects from the use of force and he was released to security

[Defendants' Exhibit A (Sealed) at Bates No. 2].  Nurse Frisbie noted plaintiff had an abrasion to his second digit of his right hand and a scratch to the left eyebrow and to the upper eye area which required no treatment.  She also noted he had no bruises [Defendants' Exhibit A (Sealed) at Bates 3].

Plaintiff then submitted a sick call request complaining of "Headache from Zoloft."  It was received and processed by Mental Health Services on April 8, 2013 and plaintiff was scheduled to be seen.  Plaintiff was seen by a mental health caregiver on April 8, 2013 who noted plaintiff's complaint that he had "been getting' [sic] these severe headaches lately and [he thought] it might be caused by [his] Zoloft."  The caregiver noted plaintiff also said, "Other than that, I'm doin' good."  [Defendants' Exhibit A (Sealed) at Bates 4.] Plaintiff was referred for further psychiatric evaluation/consultation [Defendants' Exhibit A (Sealed) at Bates 6].

Plaintiff was seen again on April 10, 2013 at 4:00 p.m. [Defendants' Exhibit A (Sealed) at Bates 8-10].  Plaintiff's vital signs were taken and he was weighed that day.  His blood pressure was 150/93 (sitting), his weight was 221 pounds, his height was 75 inches, his pulse was 87 (sitting), his respiration was 16/min., and his temperature was 97.2, with a BMI of 28 [Defendants' Exhibit A (Sealed) at Bates 8].  Plaintiff was being seen for pre-segregation health evaluation [Defendants' Exhibit A (Sealed) at Bates 8].  Nurse Kuper noted, in relevant part, that plaintiff had no lacerations, no contusions, no bruises, no edema, no abdominal pain, no genitourinary or flank pain, no headache, and normal upper and lower extremities [Defendants' Exhibit A (Sealed) at Bates 8, 9, 10].  Plaintiff was cleared for crisis management/segregation [Defendants' Exhibit A (Sealed) at Bates 10].

Nurse Kuper also noted she observed no alteration in mental status or significant injury, and there was no patient complaint indicating a need for a higher level of triage/care at that time [Defendants' Exhibit A (Sealed) at Bates 10].

Plaintiff does not dispute the accuracy of his medical records or contend he suffered any serious injury. Instead, he argues there was no need for any use of force at all and no attempt to temper the severity of the force utilized. He also says the refusal to feed him or provide him water did not fall within the ambit of mental health services and by the time he was examined by Nurse Kuper on the 10th, he was already being transferred to another housing assignment.

The malicious and sadistic use of force to cause harm violates contemporary standards of decency. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). A use of force which is not "repugnant to the conscience of mankind," *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), is excluded from the Eighth Amendment's prohibition of cruel and unusual punishment and is considered to be *de minimis*. Consideration of the injuries plaintiff suffered leads to the conclusion that the force utilized was *de minimis*. Plaintiff's only injury was a single scratch to his left eyebrow and the upper eye area. Plaintiff did not require first aid or any other medical treatment and had no further problems.

Moreover, the video showing plaintiff's condition, movements, and speech immediately after the use of force demonstrates with clarity that plaintiff was uninjured, despite his claims of being stomped repeatedly in the head, punched in the face, kicked in the groin and his claim that his testicles were stomped.

Plaintiff is correct that summary judgment evidence must be viewed in the light most favorable to the non-moving party if there is a *genuine* dispute as to the facts. Plaintiff's version

of events, however, is contradicted by the video following the challenged use of force.  In *Scott v.*

*Harris,* 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) the Supreme Court held

that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by

the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.  The court could

instead rely on the videotape of the events in evaluating the motion for summary judgment rather

than the "visible fiction" offered by the non-moving party.  *Id.* at 381.

Further, defendants have presented summary judgment evidence showing defendants

CANTU, KING, and KEMPH were not present and did not participate in the challenged use of

force.  Defendant Officers CANTU and KEMPH were still inside the recreation room with

Officer Klein and defendant Officer KING had resumed the rack-up process on the pod.

Defendant Officer CANTU left Officer Klein after arranging for Klein's escort to the infirmary

by Officer KEMPH, and arrived at the scene of the use of force immediately after its completion.

[Defendants Exhibits I, J, K, L, and M].

The injury plaintiff suffered is *de minimis* and will not support a valid Eighth Amendment

claim of excessive force.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)(unprovoked

twisting of inmate's arm and twisting his ear resulting in sore and bruised ear for three days

constituted *de minimis* injury indicating *de minimis* force).

The Court notes that, to support his claim of excessive force, plaintiff relies on his sworn

complaint and the unsworn declaration under penalty of perjury by an inmate Allen, stating he

saw the defendants stomp, kick, and beat plaintiff [Plaintiff Exhibit I].  Plaintiff's self-serving

statements and those of inmate Allen, rebutted as they are by the abundance of evidence showing

that plaintiff suffered no appreciable injury and that defendants CANTU, KING, and KEMPH were not even present at the time of the use of force in question, does not create a jury question on this issue and does not defeat defendant's entitlement to qualified immunity.  *See, Yoder Bros., Inc. v California-Florida Plant Corp.,* 537 F.2d 1347, 1371 (5th Cir. 1976); *Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*, 2011 WL 3667435, 3 (5th Cir. 2011)(a self-serving affidavit, without more evidence, will not defeat summary judgment.")(citing *DIRECTV, Inc. v. Budden*, 420 F.3 521, 531 n. 49 (5th Cir. 2005)).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where there is evidence in the record to the contrary.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000).

The summary judgment evidence before the Court conclusively demonstrates the quantum of force utilized against plaintiff was *de minimis* and did not in any manner constitute a violation of the Eighth Amendment prohibition against cruel and unusual punishment.  Further, plaintiff has failed to demonstrate any act by defendant HARRIS, the sole defendant actually involved in the challenged use of force[4], or by any of the other defendants was objectively unreasonable as a matter of law.

**CONDITIONS OF CONFINEMENT**

Plaintiff claims that, following the challenged use of force, he was confined in conditions which constituted cruel and unusual punishment.  He alleges the defendants "kept plaintiff in his cell for 4½ days with no food, running water, no necessities, or writing materials."  Plaintiff claims he suffered eyesight disorientation and weight loss.

---

[4]TDCJ records show defendant HARRIS and an Officer Madrid conducted the actual take-down.

Plaintiff presents summary judgment evidence in the form of his own unsworn declaration made under penalty of perjury stating that, he "received no meals, showers, or recreation time." [Plaintiff's Exhibit F].  He says he submitted a grievance on April 8, 2013 which was not properly investigated and contends the activity log submitted by defendants is false.  Plaintiff has also submitted an unsworn declaration made under penalty of perjury by an inmate Garza stating that he "witnessed [plaintiff] not being fed at no [sic] meals and when he complained to officers he was ignored.  I heard him ask for sheets and clothing and none was given to him.  He wasn't allowed to come out for shower and I also [sic] him ask officer Crozby why they wouldn't feed him and Officer Crozby told him they had very strict orders from Capt. Kemph not to feed him."  Garcia says he also heard Mrs. King (Sergeant) tell him they had "kicked his a__" and witnessed other inmates giving plaintiff water in a plastic bag.  [Plaintiff's Exhibit G].

Plaintiff has also provided the unsworn declaration under penalty of perjury by inmate Geter stating he witnessed an officer not feeding plaintiff and that plaintiff's water was turned off for no reason and his requests for sheets and clothes and for his water to be turned on were ignored.  He states that on one occasion he heard "Officer Corzby [sic]" tell plaintiff they had strict orders from Capt. Kemph not to feed plaintiff at all and heard Sgt. King tell plaintiff they had "kicked [his] a__."  He says he personally sent plaintiff water in a plastic bag on several different occasions. [Plaintiff's Exhibit H].

Defendants have provided Affidavit evidence that they had no knowledge of or involvement with any deprivation of food, water, or necessities. [Defendants Exhibits I, J, K, L, and M].  While plaintiff alleges an officer told plaintiff that defendant KEMPH ordered plaintiff

not to be fed, plaintiff offers no evidence to support the truth of this alleged hearsay statement. In fact, no competent summary judgment evidence supports this aspect of plaintiff's claim.

Defendants also present the Segregation Confinement Activity Records on plaintiff for the dates April 6, 2013, April 7, 2013, April 8, 2013 [Defendants' Exhibit at Bates 40]  and April 9, 2013, and plaintiff's Disciplinary Cell Record for Solitary Confinement for April 9, 2013 and April 10, 2013.  These records show the names of the officers responsible for monitoring the provision of plaintiff's food and necessities.  The Segregation Confinement Activity Records for April 6, 2013 show plaintiff was placed in pre-hearing detention per Lt. Carreon at 9:50 a.m. and was subject to various property restrictions, as well as prohibited from having razors and steel toe boots [Defendants' Exhibit at Bates 40].  He was to receive recreation or exercise within 72 hours [Defendants' Exhibit at Bates 40].  The form provides for various activities to be marked if they are not received [Defendants' Exhibit at Bates 40].  While it shows plaintiff did not receive a shower on April 7th and on April 8th, it also shows plaintiff received all three meals on April 6th, April 7th, and April 8th [Defendants' Exhibit at Bates 40].  The Activity Record is signed by an Officer Orlds [Defendants' Exhibit at Bates 40].

The Segregation Confinement Activity Records for plaintiff for April 9, 2013 [Defendants' Exhibit at Bates 37 and 41] show plaintiff was allowed out of his cell at 6:45 a.m. for a shower and was released to assignment in solitary per the Disciplinary Hearings Officer (DHO) at 9:00 a.m. [Defendants' Exhibit at Bates 41].  The Activity Record shows plaintiff was placed in solitary per the DHO at 9:00 a.m.[Defendants' Exhibit at Bates 37].  The Disciplinary Cell Record for Solitary Confinement for April 9, 2013 and April 10, 2013 shows plaintiff received no shower on April 9th after his transfer to Solitary Confinement, no clothes and no

shaves, but did receive all three meals [Defendants' Exhibit at Bates 38].  In addition, staff

monitored plaintiff's condition every thirty minutes on April 9th from his admission on the first

shift until the end of the third shift [Defendants' Exhibit at Bates 39].  The Disciplinary Cell

Record for Solitary Confinement for April 10, 2013 shows plaintiff received a shower, clothing

and a shave, as well as breakfast [Defendants' Exhibit at Bates 38].  In addition, plaintiff was

monitored every thirty minutes until his reassignment during first shift [Defendants' Exhibit at

Bates 39].

　　　These prison records presented by defendants, maintained by persons other than the

defendants, conclusively establish that plaintiff received all of his meals on April 6, 7, 8, and 9th

and received a shower on April 9th before his transfer to solitary.  Plaintiff's self-serving

affidavits do not create a jury question on this issue and do not defeat defendant's entitlement to

qualified immunity.  *See, Yoder Bros., Inc. v California-Florida Plant Corp.,* 537 F.2d 1347,

1371 (5th Cir. 1976); *Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*, 2011 WL 3667435, 3

(5th Cir. 2011)(a self-serving affidavit, without more evidence, will not defeat summary

judgment.")(citing *DIRECTV, Inc. v. Budden*, 420 F.3 521, 531 n. 49 (5th Cir. 2005)).  A party's

self-serving and unsupported statement in an affidavit will not defeat summary judgment where

there is evidence in the record to the contrary.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir.

2000).

　　　Moreover, defendants have also provided plaintiff's medical records for the same period

[Defendants' Exhibit A (Sealed)].  Plaintiff was examined by a Nurse Frisbie on April 6, 2013

and released for confinement in administrative segregation.  At that time, plaintiff was not

weighed.  Nevertheless, plaintiff, himself, says he weighed about 221 lbs.  [Plaintiff's Response to Defendants' Motion for Summary Judgment at page 6].

On April 8, 2013, plaintiff submitted a sick call request which was received and processed by Mental Health Services on April 8, 2013.  The only complaint it contained was, "Headache from Zoloft."  [Defendants' Exhibit A at Bates 7].  Plaintiff was examined by a mental healthcare worker, who noted in his Mental Health Outpatient Clinical Interview that plaintiff's complaint was of severe headaches which he thought might be caused by his Zoloft. He also noted plaintiff remarked, "Other than that I'm doin' good."  [Defendants' Exhibit A at Bates 4].  He noted plaintiff was "polite, cooperative, dress and hygiene appropriate" and that plaintiff was "relaxed and calm."  [Defendants' Exhibit A at Bates 5].  Plaintiff was not weighed at this time either.

On April 10, 2013, plaintiff was examined to be cleared for pre-segregation/crisis management and was weighed that day.  Plaintiff's weight was 221 pounds.  [Defendants' Exhibit A at Bates 8].  The nurse noted plaintiff's general appearance was clean and his skin turgor was good, with no lacerations, contusions, or bruises.  [Defendants' Exhibit A at Bates 8]. She noted plaintiff reported no abdominal pain or headache, his pupils were equal and reactive, and he had normal upper and lower extremities.  [Defendants' Exhibit A at Bates 9, 10].  Lastly, she noted there was no patient complaint indicating a need for a higher level of triage/care at that time.  [Defendants' Exhibit A at Bates 10].

The medical records discussed above show plaintiff did not suffer from "eyesight disorientation and weight loss" on April 10, 2014.  His weight was still 221 lbs. and his pupils were equal and reactive.  Plaintiff did not make any complaint of eye problems or any other

problem requiring care at that time.  Further, the mental healthcare provider who saw plaintiff on

April 8, 2014 noted plaintiff's remark that, other than his headache from Zoloft, everything was

good.  In an attempt to overcome the conclusive effect of these records, plaintiff has argued they

have been falsified.  Conclusory allegations that medical records have been falsified are not

sufficient to defeat a motion for summary judgment.  *Knighten v. Ott*, 69 F.Appx. 657, 2003 WL

2135594 (5th Cir., May 21,2003); *Michaels v. Avitech Inc.*, 202 F.3d 746, 754-55 (5th Cir.

2000).

      Plaintiff's story is so blatantly contradicted by the record that no reasonable jury could

believe it.  *Scott v. Harris*, 550 U.S. at 380-81.  Plaintiff has not created a fact issue on the

question of his conditions of confinement or any harm resulting therefrom, and has not defeated

defendants' entitlement to qualified immunity.  More importantly, plaintiff has not shown any

condition of confinement to be unconstitutional or that he suffered any harm as a result.

**CONSPIRACY**

      To state a conspiracy claim under section 1983, plaintiff must allege facts showing "(1)

the existence of a conspiracy involving state action and (2) a deprivation of civil rights in

furtherance of the conspiracy by a party to the conspiracy."  *Pfannstiel v. City of Marion*, 918

F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v.

Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).  It is well settled that " 'mere conclusory allegations

of  conspiracy cannot, absent reference to material facts,' state a substantial  claim of federal

conspiracy."  *McAfee v. 5th Circuit Judges*, 884 F.2d 221 (5th Cir.1989), *cert. denied*, 493 U.S.

1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990).

Plaintiff has failed to present facts to support the claimed constitutional violations and has presently only conclusory allegations to support his claims of conspiracy.  Plaintiff has failed to state a claim of conspiracy on which relief can be granted.

## CONCLUSION

For the reasons set forth above,  it is clear that, drawing all reasonable inferences in favor of plaintiff, there is no material issue of disputed fact which precludes entry of summary judgment for the defendants on the merits and on the issue of qualified immunity.  Federal Rule of Civil Procedure 56(a).

Pursuant to 28 U.S.C. § 1915A(2), § 1915(e)(2), it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that defendants' Motion for Summary Judgment be GRANTED; and that all remaining claims by plaintiff ADRIAN THADDEUS WILSON be DISMISSED WITH PREJUDICE.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

**IT IS SO RECOMMENDED.**

ENTERED this 4th day of September, 2014.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## **\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).